UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: Darrell D. Edwards, | Chapter 13 |
| Debtor. | Case No. 11-23195-MDM |

| | |
|---|---|
| Darrell D. Edwards, | |
| Plaintiff, | |
| v. | Adversary Proceeding |
| | Case No. 11-02505-MDM |
| Deutsche Bank National Trust Company as Trustee for the Morgan Stanley ABS Capital I Inc. Trust 2006-HE4, et.al., | |
| Defendant. | |

**BRIEF IN SUPPORT OF ADVERSARY PROCEEDING, DEBTOR'S OBJECTION TO CLAIM, AND OBJECTION TO MOTION FOR RELIEF FROM STAY**

## I. INTRODUCTION

The debtor presents this brief as further support of his response to Deutsche Bank's Motion to Dismiss Adversary Complaint. The debtor respectfully requests that the court consider the arguments raised here and in the Response to the Motion to Dismiss filed as document 7 in this Adversary Proceeding as replies to the defendant/claimant's ( hereafter referred to as the defendant) Response to the Amended Objection to the Relief from Automatic Stay and to the debtor's Objection to Claim 5. The issues in all three of these matters are basically the same or very similar. In regard to the pleadings in this Adversary Proceeding, the debtor asserts that he has met the required pleading standard to withstand a motion to dismiss.

THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

# II. STANDARD FOR MOTION TO DISMISS

In Ashcroft *v. Iqbal*, 129 S. Ct. 12937, 173 L.Ed. 2d 868 (2009), the Supreme Court clarified the law concerning the standard for Motions to Dismiss under Rule 12(b)(6).

According to the *Iqbal* decision, Rule 8(a) requires: "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Iqbal*, 129 S. Ct. at 1949. A claim is has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The debtor asserts that the pleadings contained in this Adversary Proceeding meet the requirement to plead plausible claims with sufficient facts in regard to the complaint and in regard to the objection on file to Claim Number 5 and the Objection to the Relief From Stay as well.

1. **The Debtor Raises Issues Of Standing And Real Party In Interest That Preclude Dismissal As A Matter Of Law Even If The Court Finds That The Note Is A Negotiable Instrument.**

The debtor previously asserted in his Response to the Motion to Dismiss the Adversary Complaint that the defendant's argument fails because the note is not a negotiable instrument for reasons cited therein. The debtor has also asserted that the movant must show the actual delivery of the mortgage note and the proper chain of transfers as called for in the PSA for the trust.

The debtor further asserts that even if the court finds the note is a negotiable instrument under Chapter 403 of Wisconsin Statutes, Deutsche Bank's argument still fails because the debtor has raised issues of standing and real party in interest to challenge the movant's ability to file a claim or a motion in this bankruptcy. Further, the standing /real party in interest issues are also central to the claims raised in this Adversary Proceeding .

While the debtor maintains that the movant must show real evidence of delivery of the note to the trust as well as the proper sequence of conveyances, the first part of this brief will cover

some basic issues under the UCC to address some basic arguments in Deutsche Bank's motion and responses.

### 2. The Movant's Arguments Fail Because Standing Is A Threshold Issue And The Movant Is Requesting The Court To Rule Without Proper Examination Of All The Evidence.

The clamant makes several arguments regarding the debtor's objection to the claim. First, the claimant argues the debtor is not entitled to contest the standing of the claimant and its status as a real party in interest, citing to provisions of the WI UCC. This is incorrect as a matter of law. Standing is a threshold issue that must be addressed by the court and the debtor has every right to raise it. As the court in *In re Veal,* … noted Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *In re Veal,* 2011 Bankr. 2359 *at,* 14, *citing, Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). See also*, *Arizona Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442, 179 L. Ed. 2d 523 (2011)*; *City of Los Angeles v. County of Kern, 581 F.3d 841, 845 (9th Cir. 2009). Id. at,*14.

The court must examine all aspects of standing and real party in interest in order to make a reasoned decision on the debtor's objection to the RFS motion, Objection to claim and the Adversary Proceeding.

The movant asserts that the purported endorsements on the copy of the note attached to the claim must be presumed without question, to show Deutsche Bank owns and holds the note. The logic of this argument means that the court must accept unauthenticated copies of documents without an evidentiary hearing. This would also mean that the debtor is not entitled to any discovery in this case to make appropriate inquiries into the facts, including whether the note was ever actually delivered to Deutsche Bank, when this occurred and all facts surrounding the purported endorsements on the note. This is not correct. The defendant must demonstrate that is

has standing. "Constitutional standing requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." *In re Veal, at 14-15 citing, Winn, 131 S. Ct. at 1442*; *Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008)*; *United Food & Comm'l Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 551, 116 S. Ct. 1529, 134 L. Ed. 2d 758 (1996)*.

The Court must also review issues related to Prudential Standing and Real Party in Interest. Deutsche Bank must show "standing under various prudential limitations on access to federal courts. Prudential [*16] standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Sprint, 554 U.S. at 289* (quoting *Elk Grove, 542 U.S. at 11*); *County of Kern, 581 F.3d at 845*. *Id. at,* 15-16.

"[O]ne component of prudential standing is particularly applicable. It is the doctrine that a plaintiff must assert its own legal rights and may not assert the legal rights of others. *Sprint, 554 U.S. at 289*; *Warth, 422 U.S. at 499*; *Oregon v. Legal Servs. Corp., 552 F.3d 965, 971 (9th Cir. 2009)*. *Id. at,* 15-16

### 3. Deutsche Bank Bears The Burden Of Proof To Establish Standing To File A Claim Or A Motion In This Case.

The claimant cites Wis. Stat. Section 403.301 for the proposition that it is the person entitled to enforce the note and then incorrectly asserts that Section 403.308 prohibits the debtor from challenging standing. The Debtor is not claiming a defense in recoupment or a claim of another person. The movant has the Burden of Proof and the court to make an appropriate factual inquiry to determine whether the claimant has standing to pursue the motion on file and whether the movant is a real party in interest. "In all of its various aspects, the standing issue is an inherently factual inquiry into the nature of the rights asserted, see, e.g., *Sprint, 554 U.S. at 271-73*, and the

party asserting that it has standing bears the burden of proof to establish its standing. *Summers v. Earth Island Inst., 555 U.S. 488, , 129 S.Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009)* (the movant "bears the burden of showing that he has standing for each type of relief sought"); *Bennett v. Spear, 520 U.S. 154, 167-68, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)*; *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.), 290 B.R. 718, 726 (9th Cir. BAP 2002)*. These cases require that the movant bear the burden of proving both constitutional and prudential standing." *Id. at,* 18.

The debtor has the right to examine the note as well as any other documents in possession of any Custodian of the Trust. At this point, it is not clear that Deutsche Bank has possession of the note, if the note was ever delivered to the defendant and if so, when. There is nothing in the record to show the debtor's mortgage loan was ever transferred to Deutsche Bank or any chain of custody to establish Deutsche Bank as owning or holding the note.

The defendant asserts the Court should rule in the claimant's favor on an assertion that it is the holder of the note based on photocopies of documents attached to the claim without any factual inquiry. The court in the case of *In re Kemp 2010 Bankr. LEXIS 4085 (D. NJ.)* in denying the movant standing made detailed factual findings based not only on the documents presented but also on the testimony taken in court. In doing so the *Kemp* court found the movant was not the holder of the note, was not a holder in possession of the note or a person not in possession of the note who is entitled to enforce the note.

While the *Kemp* case involved an allonge as the endorsement to the note and a different factual backdrop, the case nonetheless shows the necessity of discovery and a careful factual examination of all documents and facts the movant presents to support its position. This does not allow for a dismissal of the debtor's objection simply on representations of counsel for the movant. In the event that the court finds that note in this case is a negotiable instrument under

Chapter 403 of the Wisconsin UCC, the movant still has the burden of proof as to standing and real party in interest issues and must present real evidence, including authenticated documents to show it owns and/or holds the note.

Moreover, Deutsche Bank comes before the court as the Trustee of the defendant Trust. All authority of Deutsche Bank is derived from the terms of the Trust as set forth in the Pooling and Servicing Agreement dated June 1, 2006. The debtor also asserts this leads to an inquiry as to the chain of custody of the note since the inception of the loan as well as the conveyance requirements of the Pooling and Servicing Agreement (PSA).

4. **The Claimant Must Show Adherence To The Conveyance Requirements Of The PSA Because The Authority And Powers Of The Trustee Are Set By The Terms Of The Agreement.**

The movant can only prevail on its motion if it held the Edwards note at the commencement of this action in accordance with the exacting terms of its own trust agreement.

The movant is an express trust established pursuant to a trust agreement titled "Pooling and Servicing Agreement Dated June 1, 2006" ("PSA") which provides that it is governed by the laws of the state of New York. The PSA in its entirety is located at the following weblink: http://www.sec.gov/Archives/edgar/data/1362555/000091412106003669/ms5032668-ex4.txt Excerpts of the PSA are also attached to the Adversary Complaint as Exhibit 1.

Section 10.03 of the PSA, titled "Governing Law" states, "This agreement shall be construed in accordance with and governed by the substantive laws of the State of New York applicable to agreements made and to be performed in the State of New York and the obligations, rights and remedies of the parties hereto and the Certificateholders shall be determined in accordance with such laws." New York has well settled law regarding the limitations of a trustee's power to act pursuant to EPTL §7-2.4 which states:

> § 7-2.4 Act of Trustee in contravention of trust
>
> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.

Deutsche Bank, as trustee, and Wells Fargo Bank National Association, as custodian and servicer, derive all their respective trust related rights, powers, obligations and duties in the forming the trust, in the conveyance and transfer of mortgage loans into the corpus of the trust and in the servicing of the mortgage loans transferred into the trust.

By filing the PSA and the exhibits with the Securities and Exchange Commission, the institutional actors of the trust, including Deutsche Bank, as trustee, affirmed that the PSA and the exhibits referenced therein are the entire agreement of all the entities, parties, agents and servants acting with respect to the plaintiff trust. For this reason, the PSA is the binding trust contract that controls all of the actions of the trustee, the custodian and the servicer with respect to the plaintiff trust.

The PSA is the only mechanism by which the plaintiff trust is competent to acquire, transfer, dispose of or sell any mortgage loan or other asset. As trustee of the plaintiff trust, not only is Deutsche Bank bound by the strict terms and limitations of the PSA, but it has no capacity or competency to acquire, transfer, dispose of or sell any mortgage loan or other asset on the trust's behalf outside the terms of the PSA.

Deutsche Bank appears in this action solely in its capacity as the trustee for the subject trust strictly pursuant to its designation as such under the PSA and under no other contractual or legal authority.

7

In this case, Deutsche Bank, as trustee of the plaintiff trust, has the initial burden of presenting the court with evidence that the trust held the Debtor's note at the commencement of this action.

The PSA contains definitions, the pertinent parts of which that are relevant to a determination of whether the defendant's loan was a part of and held by the plaintiff trust at the start of this foreclosure:

> **"Agreement"** This Pooling and Servicing Agreement and all amendments or supplements hereto.
>
> **"Assignment of Mortgage"** An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form (other than the assignee's name and recording information not yet returned form the recording office), reflecting the sale of the Mortgage to the Trustee.
>
> **"Closing Date"** June 23, 2006
>
> **"Cut-off Date"** The date or dates designated as such on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.
>
> **"Mortgage"** The mortgage, deed of trust or other instrument securing a Mortgage note, which creates a first lien, in the case of a First Lien Loan, or a second lien, in the case of a second Lien Loan, on the Mortgaged Property..
>
> **"Mortgage File"** The items pertaining to a particular Mortgage Loan referred to in Exhibit A annexed hereto, and any additional documents required to be added to the Mortgage File pursuant to this Agreement.
>
> **"Mortgage Loan"** An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the applicable Mortgage Loan Schedule, which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, Servicing Rights and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding replaced or repurchased mortgage loans.
>
> **Mortgage Loan Schedule"** (in part) The schedule of Mortgage Loans setting forth the following information with respect to each Mortgage Loan in the related Mortgage Loan Package: (1) the Seller's Mortgage Loan identifying number; (2)

the Mortgagor's name; (3) the street address of the Mortgaged Property including the city, state and zip code; (4) a code indicating whether the Mortgagor is self-employed; (5) a code indicating whether the Mortgaged Property is owner-occupied; (6) the number and type of residential units constituting the Mortgaged Property… With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information, as of the related Cut-off Date: (1) the number of Mortgage Loans; (2) the current aggregate outstanding principal balance of the Mortgage Loans; (3) the weighted average Mortgage Interest Rate of the Mortgage Loans; (4) the weighted average maturity of the Mortgage Loans; (5) the applicable Cut-off Date; and (6) the applicable Closing Date."

**"Mortgage Note"** The note or other evidence of the indebtedness of a Mortgage secured by a Mortgage.

**"Mortgaged Property"** With respect to each Mortgage loan, the Mortgagor's real property securing repayment of a related Mortgage Note consisting of an unsubordinated estate in fee simple or, with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely accepted practice, a leasehold estate, in one or more separate and complete tax parcels of real property improved by a Residential Dwelling.

**"Mortgagor"** The obligor on a mortgage note.

**"Originator"** New Century Mortgage Corporation, its successors in interest and assigns.

**"Sponsor"** Morgan Stanley Mortgage Capital Inc., a New York corporation, and its successors in interest, as purchaser of the Mortgage Loans under each of the Purchase Agreements.

**"REMIC"** A "real estate mortgage investment conduit: within the meaning of Section 860D of the Code.

**"Startup Day"** is August 26, 2005 with respect to each **Trust REMIC.**

**"Trust Fund"** The corpus of the trust created hereunder consisting of (i) the Mortgage Loans and all interest and principal with respect thereto received on or after the related Cut-off Date, other than such amounts which were due on the Mortgage Loans on or prior to the related Cut-off Date; (ii) the Collection Accounts, Excess Reserve Fund Account, the Distribution Account, and all amounts deposited therein pursuant to the applicable provisions of this Agreement; (iii) property that secured a Mortgage Loan and has been acquired by foreclosure, deed-in-lieu of foreclosure or otherwise; (iv) the Closing Date Deposit Amount; (v) the Interest Rate Swap Agreement; (vi) the Swap Assets;

(vii) the Depositor's rights under the Option One Agreement (solely insofar as the agreement relates to the Option One Mortgage Loans), (viii) the Countrywide Servicing Agreement, and (ix) all proceeds of the conversion, voluntary or involuntary, of any of the foregoing.

**"Trustee"** Deutsche Bank National Trust Company, a national banking association, and its successors in interest and if a successor trustee is appointed hereunder, such successor.

Under Section 2.01 of the PSA, Morgan Stanley ABS Capital I, Inc., as the Depositor agreed to transfer Deutsche Bank National Trust Company as the Trustee on behalf of the Claimant Trust, "all the right, title, and interest" of the Depositor in the Trust Fund concurrently with the execution and delivery of the PSA. This transfer from the Depositor to the Trust includes the mortgage loans which includes the original mortgage notes and the original mortgages. Further, Section 2.01(b)(i) specifically states that the Depositor must deliver to the Custodian and the Trustee " (i) the original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer. To the extent that there is no room on the face of the Mortgage Note for endorsements, the endorsement may be contained on an allonge, unless the Trustee or applicable Custodian, as applicable, is    advised in writing by the applicable Originator (if required by the applicable Purchase Agreement) or the Depositor that state law does not so allow;"

The *Kemp* court, in examining the PSA, noted, "The Agreement expressly provided **[\*6]** that in connection with the transfer of each loan, the depositor was to deliver "the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: 'Pay to the order of          without recourse', with all intervening endorsements that show a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note." PSA §

2.01(g)(i) at 56. Most significantly for purposes of this discussion, the note in question was never indorsed in blank or delivered to the Bank of New York, as required by the Pooling and Servicing Agreement." 2010 Bankr. LEXIS 4085, *at, 5-6*.  While the defendant is this case has attached a note to the claim on file with purported endorsements, there is no evidence presented to show that the note has been delivered to the Trustee. Therefore, the court should not dismiss the Adversary complaint or overrule the debtor's objection to the Claim 5 or the Relief From Stay motion without a proper factual inquiry on all issues.

Under Section 2.02 of the PSA, the Trustee and the Custodian must acknowledge receipt of all mortgage loan documents subject to Section 2.01.  Section 2.02 specifies that the trustee acknowledges receipt of the documents identified in the Initial Certification,(a form annexed to the PSA as Exhibit E).  Further, the Trustee must ascertan all documents identified in the document Certification Exception Report in the form attached to the PSA as Exhibit F within 90 days of the Closing date with respect to the mortgage loans in the possession of the Trustee or the Custodian.

There is no evidence presented at this point that:

a. The original mortgage note of the debtor that is the subject of the Claim on file and the motion bearing all intervening endorsements necessary to show a complete chain of endorsements from the originator was delivered to Deutsche Bank by the Depositor by the closing date of June 23, 2006.

b. That the appropriate documentation including the Initial Certification as Exhibit E with a Document Certification and Exception Report as Exhibit F were properly executed (with Exhibit F being delivered to the depositor).

  c. That the endorsements stamped on the note were placed there on or before the closing date of the trust and not at some later date simply for the purpose of filing a claim in this bankruptcy.

5. **The Parties To The Trust Have Varied The Provisions Under The UCC By Private Agreement With The Provisions Of The PSA.**

At this point, given the documentation presented, even if this Court were to accord the Trustee in this action the status of a transferee of an instrument under the Uniform Commercial Code, Deutsche Bank would still not be a holder of the note and therefore is not entitled to file the motion for relief from the stay or a claim in this case under the UCC, whether the Court looks to the laws of New York or Wisconsin. As applied to the trust in this case, all provisions of the Uniform Commercial Code are subject to be varied by private agreement (subject to limitations not applicable to this case). Section 1-102(3) of the New York UCC states

> The effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable. NYCLS UCC §1-102(3)

Wis. Stat§ 401.102(2)(b) titled: "Purposes, Rules and Construction; Variation by Agreement" states that "Underlying purposes and policies of chs. 401 411 are: …(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties." Wis. Stat.§401.102(2)(b). While the debtor asserts that the laws of the State of New York will apply as the applicable laws for the transfer of the note under the terms of the trust, it is clear that the result is the same under either Wisconsin or New York law.

This broad grant of power to private parties to contract away from the UCC by private agreement is only limited by prohibitions contained in other provisions of the UCC not

applicable here and the parties are prohibited by the UCC from deviating or contracting away their respective UCC "obligations of good faith, diligence, reasonableness and care"
The UCC clearly respects the right of the defendant in the present action to enter into a private agreement, the PSA, which self-limits the defendant and changes the standards by which the trust can access holder status and gain UCC rights to enforcement. The UCC bestowed the plaintiff trust with the right to set up different standards as long as those divergent standards are not manifestly unreasonable.

The effect of NY CLS UCC §1-102(3) or Wis. Stat. §Section 401.102(2)(b) is to grant the defendant the right and power, to execute the PSA and to expressly deny the power of Deutsche Bank as the trustee of the trust to claim "transferee" or other "non-holder" status on behalf of the trust in this case where the Edwards Mortgage Loan was not transferred to the trust as required by the strict terms of the PSA by June 23, 2006.

The sophisticated institutional actors of the trust were free to enter into the PSA and the other agreements which change the legal consequences that would otherwise flow from the application of the UCC. The PSA is now the primary source of rules that are intended by the parties to vary the effect of the UCC with respect to how and when the plaintiff trust can achieve holder status of a negotiable instrument. And this holder status is a statutory and common law precedent to the trust having any legal right to enforce the debtor's note under the UCC or to file a Motion for Relief from the Stay or file a claim in this bankruptcy.

The trust in the instant case effectively gave up its claim to rely on a direct unaltered path to UCC enforcement rights and, by the terms the defendant must show the court the proper transfer and delivery of the Edward note in accordance with the PSA.

Insofar as the parties to the trust have set the transfer and conveyance requirements for the mortgage loans to be pooled into the trust by agreement, the movant cannot rely on an Article 3 argument that it has the status of a holder of the note. Furthermore, even assuming, *arguendo* the defendant may be entitled to assert the status of holder of the note, Deutsche Bank as Trustee bears the burden of proof to demonstrate this with appropriate evidence, including the delivery of the note by the Depositor to the Trustee. Rubber stamped endorsements on a note do not accomplish this and discovery and an evidentiary hearing are necessary.

## CONCLUSION

The debtor asserts that the movant cannot assert it is a holder of the note under Wis. Stat. Section 403.203 because the note is not a negotiable instrument under the Wisconsin Commercial Code as outlined in the debtor's Response dated August 30, 2011 to the Motion to Dismiss the Adversary complaint. However, assuming *arguendo* that the Court were to find the note in this case is a negotiable instrument, the movant's request for the Court to dismiss the objection to the Relief from Stay Motion out of hand and without any real evidence of the transfer of the note still fails. The Court cannot allow the movant to rely on unauthenticated documents absent any discovery by the debtor and without an evidentiary hearing to determine whether the movant has standing. Moreover, the debtor asserts that this Court should review the Pooling and Servicing Agreement in this case and to make a determination on real evidence and any appropriate testimony.

The debtor respectfully asserts that the Court must examine all facts surrounding this case in order to make a proper determination of a threshold issue of standing and real party in interest and therefore should deny the movant's request to dismiss the debtor's Objection to the Relief from Stay Motion out of hand. The logical conclusion of the movant's reasoning is for the Court

to accept whatever the movant says without authentication of documents, without the presentation of any real evidence to support the movant's claim and to ignore proper procedures and the rules of evidence in making the determination of constitutional and prudential standing.

Dated this 16th day of September, 2011 at West Allis, Wisconsin

*/s/Rollie R. Hanson*

Rollie R. Hanson, Attorney for Debtor/Plaintiff

Case 11-23195-svk    Doc 48    Filed 09/16/11    Page 15 of 16

15

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: Darrell D. Edwards, | Chapter 13 |
| Debtor. | Case No. 11-23195-MDM |

| | |
|---|---|
| Darrell D. Edwards, | |
| Plaintiff, | |
| v. | Adversary Proceeding<br>Case No. 11-02505-MDM |
| Deutsche Bank National Trust Company as Trustee for the Morgan Stanley ABS Capital I Inc. Trust 2006-HE4, et.al., | |
| Defendant. | |

**AFFIDAVIT OF SERVICE**

STATE OF WISCONSIN  )
                     ) SS:
COUNTY OF MILWAUKEE )

    Leigh Anne Muller, being first duly sworn and upon oath hereby deposes and says that on September 16, 2011 she served via CM/ECF a true and correct copy of the *Brief in Support of Adversary Proceeding, Debtor's Objection to Claim and Objection to Motion for Relief from Stay* on the following parties:

| | |
|---|---|
| Trustee Mary B. Grossman | ecf@chapter13milwaukee.com |
| Office of the U.S. Trustee | ustpregion11.mi.ecf@usdoj.gov |
| Attorney Jay J. Pitner | bknotices@gray-law.com |
| Attorney Erik G. Weidig | eweidig@foley.com |

                                                                                               */s/Leigh Anne Muller*

Subscribed and sworn to before me
this 16th day of September, 2011.


*/s/Rollie R. Hanson*
Rollie Hanson
Notary Public, State of Wisconsin
My Commission is Permanent

> THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
> 6737 West Washington Street, Suite 1420
> West Allis, Wisconsin 53214
> (414)321-9733 Fax (414)321-9601
> Rollie@hansonlaw.net